## STATE OF OREGON EX REL. J. W. CHURCH, APPELLANT, *v.* M. DUSTIN, RESPONDENT.

PLEADING—COMPLAINT IN ACTIONS TO TRY THE RIGHT TO AN OFFICE.—A complaint is insufficient in law, in a proceeding under § 354 of the Civil Code, to have an officer adjudged disqualified or ineligible to hold an office, under the laws of this State, on account of having promised to reward a voter, unless it appears affirmatively that such promise, if performed, would inure to the benefit of such voter.

IDEM—WHAT WILL CONSTITUTE AN OFFER OF A REWARD.—A promise by a candidate for the office of county judge, made to the voters of his county, prior to his election, that he will, if elected, pay into the county treasury two hundred dollars per annum of his salary as judge, is not an offer to reward a voter, under § 7, Art. 2, of our State Constitution, unless it also appears that the voters influenced by such offer were taxpayers in such county, or would in some way be benefited by the performance of such offer.

APPEAL from Grant County.

This is a proceeding under § 354 of the Civil Code, for the purpose of having the respondent adjudged ineligible to hold the office of county judge of Grant County, and to have him ousted therefrom.

It is alleged in the complaint, in substance, that at the June election, 1874, the relator, the respondent, and Eli Lester were candidates for county judge of Grant County; that the respondent received two hundred and seventy-six votes; the relator, two hundred and seventeen; and Lester, one hundred and six; that at such election the respondent induced seventy voters to vote for him, upon the promise that, if he was elected to the office of county judge, he would pay two hundred dollars per annum out of his salary (eight hundred dollars), into the county treasury of Grant County; that the respondent received a certificate of election, and thereafter usurped the office, etc.

The respondent demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and judgment rendered in favor of respondent for his costs, from which judgment this appeal is taken.

*B. Whitten,* for Appellant.

*M. Dustin, in person,* for Respondent.

By the Court, BONHAM, C. J.:

Section 354 of the Civil Code, under which this proceeding was instituted, declares that " an action at law may be maintained in the name of the State, upon the information of the prosecuting attorney, or upon the relation of a private party, against the person offending, in the following cases:

"1. When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, civil or military, or any franchise within this State, or any office in a corporation, either public or private, created or formed by or under the authority of this State."

It is not claimed in this case that the respondent either bribed or offered to bribe, or reward directly, any one of the seventy voters named in the complaint; but it is claimed that a promise to reward a third person, whether it be a natural or artificial person, would be within the spirit of the law, and would embrace the mischief which it is intended to obviate.

Our Criminal Code (§ 627) makes it a felony to pay or promise to pay any valuable consideration, or thing whatever, to influence a voter to vote for or against a particular person, at any legally authorized election in this State, and denounces the act as bribing or offering to bribe a voter.

Section 7 of Art. 2 of our State Constitution declares that " every person shall be disqualified from holding office, during the term for which he may have been elected, who shall have given or offered a bribe, threat, or reward to procure his election."

It is claimed by respondent that the complaint, in any view of the case, fails to show that respondent comes either within the purview of § 627 of the Criminal Code, or § 7 of Art. 2 of our State Constitution, hereinbefore referred to, for the reason that it does not appear from the complaint that any one of the seventy voters, therein referred to and named, was a taxpayer in Grant County.

It is not charged that the respondent has actually paid

into the treasury of Grant County any part of his salary as county judge, under the promise made to the seventy voters referred to, but it is only charged that he promised to do so, in order to secure their votes.

What is meant by the term "reward," as used in the Constitution, and in § 627 of the laws referred to? Burrill defines a reward to mean "compensation or remuneration for services; a sum of money paid or taken for doing or forbearing to do some act."

The payment of stipulated sums of money into the county treasury of Grant County, by the respondent, would inure to the benefit of the resident property-holders and taxpayers of that county, by reducing *pro tanto* the rates necessary to be levied by the county authorities to maintain its corporate government and other expenses incidental thereto. But unless it appears from the complaint that the seventy voters, or some of them, at least, were taxpayers, we hardly think it could be claimed that they would have been compensated, or remunerated, for casting their votes for respondent, if he had performed his agreement to pay two hundred dollars per annum of his salary into the county treasury. If the promise *executed* would not have operated as a reward, the same promise *unexecuted* would not operate as a promise to reward.

It might be very plausibly argued, it is true, that, as a matter of fact, probably some of the seventy voters named in the complaint of the relator were at the time taxpayers in Grant County, and, for that reason, would have been at least indirectly benefited by the payment of money into the county treasury. But that will not do. In the construction of pleadings, under a statute or constitutional provision, penal in its character, there is no authority for indulging in presumptions or probabilities of this nature.

It was also urged, upon the argument of this cause by respondent, that the charge made against him in the complaint that he had promised the seventy voters of Grant County therein named, to pay two hundred dollars per annum of his salary as county judge into the county treasury in case of his election, would not, in any event, be a

promise "to reward a voter" within the meaning of § 7, Art. 2, of our Constitution, or within the meaning of § 627 of the Criminal Code. In answer to this, counsel for appellant cites the case of *The State of Wisconsin ex rel. Newell* v. *Purdy* (Feb. number Am. Law Reg. 90).

In order to constitute the rewarding or the bribing of a voter by a candidate for office, we do not think it essential that the candidate should pay the price agreed upon for such vote directly into the hands of the voter in question; but the same results would follow the payment of the purchase-price to a third person, or to an association or community of persons, if so made by the direction of the voter, and for his use and benefit. A payment, under such circumstances, would be made to the agent of the voter, and in contemplation of law, would be a payment to him.

It is doubtless true, in some instances, in cases like this, that an offer made by a candidate to discharge the duties of the office which he seeks for less than the salary fixed by law, is made in good faith and for the purpose of promoting retrenchment and reform in the administration of public affairs. Such may have been the motives which actuated the respondent in this case; but of that we cannot speak, because the merits of the case are not before us in that respect. Yet we are clearly of the opinion that the general tendency of the practice, by candidates for office, in offering, directly or indirectly, any pecuniary consideration whatsoever to secure the votes of electors, is demoralizing in its effects, and contravenes well-established principles of public policy; although the act may, in many cases, fall short of bribery under the criminal law. And, in this connection, we desire to quote from and give full sanction to the earnest and logical opinion of Mr. Justice Lyon, in the case of *The State of Wisconsin* v. *Purdy*, above cited.

In this case, Newell, the relator, published a card, addressed to the voters of Vernon County, offering himself as a candidate for the office of County Judge of said county, and pledging himself, if elected, to discharge the duties of the office for seven hundred dollars, the lawful salary being one thousand dollars per annum. The defendant Purdy,

who was at the time the acting incumbent of the office in question, refused to surrender the office to Newell, for the reason, as alleged in his answer, that one hundred of the voters and taxpayers of said Vernon County, who had intended to vote for him (Purdy) for said office of county judge, were, by the corrupt and unlawful promise of Newell, induced to change their minds and to cast their votes for said Newell for said office.   In deciding the case, Mr. Justice Lyon said:

"It was argued by the learned Attorney-General, that the proposition made by the relator to the voters of Vernon County, was merely a protest against high salaries; and, being in the direction of reform and economy in public expenditures, should rather be commended than censured.

"Promises, made to the people by candidates for public office, that, if elected, they will practice a rigid economy in the expenditures of their several departments, are unobjectionable; and, if the successful candidate fulfills his pledge in that behalf, he is entitled to commendation. In such case, the candidate only promises to perform a legal and a moral duty. For example, should a candidate for Governor promise that, if elected, he would discharge all persons employed by the State whose services are not needed, or, that he would prevent all unnecessary expenditure of public funds, so far as he may have power to do so, this is only a promise that, if elected, he will, in those respects, faithfully perform the duties of his office. In other words, it is a promise that he will not violate his official oath. But, should such candidate propose to the voters and taxpayers of the State, that, if they will elect him to the office of Governor, he will serve the State therein gratuitously, or for one half the salary allowed by the Constitution, and pay the rent of an executive office, and the expenses of fuel, stationery, and other incidentals pertaining thereto, out of his own pocket, his proposition has an entirely different aspect. In the one case, the candidate promises that, if he is elected, he will regard his official oath, and faithfully and honestly discharge his official duty; while, in the other case, he proposes to buy the office with promises to pay therefor in

personal services, or money, or both. The one tends to economy and true reform, but the tendency of the other is to introduce into elections a most mischievous element, very nearly allied to bribery—an element which never has been tolerated (and never can be, with safety) by any free government. But, we are told that propositions similar to that of the relator, are very frequently made by candidates for public offices. We have seen no case in the books, and none is within the recollection of any member of this Court, before the present case was brought to our notice, where a candidate for an important judicial office has offered to donate money or official services to the public, as a consideration for his election. We must be permitted, therefore, to doubt whether such transactions are of frequent occurrence. On the contrary, we think they are not sustained by an enlightened public sentiment, and that they occur very rarely. If the course pursued by the relator should receive judicial sanction, it is more than probable that all those public offices which are deemed desirable, would, in time, become the objects of pecuniary bids, or offers; and, in many cases, would be bestowed upon the highest bidders, without much regard to their fitness for the positions thus purchased by them. At least, such would be the inevitable tendency. The evils of such a condition are of very grave import, and we are warned by the wisdom and experience of centuries to avoid them.

"When our elections to fill public offices cease to express the free, intelligent, and unbiased judgment and choice of the electors, when they shall be controlled or materially influenced by pecuniary offers made by the candidates, whether to the electors or to the municipality (which is but the aggregation of the electors), a most vital condition of free government will be disregarded. The tendency might be, in such cases, to banish from the public service all who will not pay for the privilege of being employed therein, and to fill it with less scrupulous, and, therefore, less trustworthy and less deserving men. Elections by the people might thus cease to express the free and unbiased judgment and will of the people, but might be controlled by merce-

nary considerations, either public or private, or both, and would thus speedily and justly fall into public contempt.

So far as we are advised, no judicial tribunal has given any countenance whatever to any practice or act which tends in that direction, but the courts have steadily held that popular elections must be kept free from any taint of corruption, and from all improper or unlawful influences whatever.   *   *   *   We would not hold that a man may buy a public office, especially a most important and responsible judicial office, just as he would buy a horse at auction; that is, by offering to pay more for it than any other person is willing to pay.   We can never give the sanction of this Court to a doctrine so pernicious."

The views of the Supreme Court of the State of Wisconsin are so forcibly and pointedly expressed on the subject under review in this case, that we could not refrain from quoting thus extensively from the opinion of the court as there rendered.

It was furthermore claimed by respondent in this case, that if the complaint herein should be held sufficient to require him to answer thereto, it would then charge him with the crime of attempting to bribe a voter, as defined by § 627 of the Criminal Code, and that judgment of conviction upon a trial by indictment, must precede a trial and judgment of ouster under the proceedings instituted by the relator in this case.   Upon this point we do not deem it necessary to pass for the purposes of this case, inasmuch as we hold that the complaint is defective in not showing that any of the seventy voters named, were taxpayers in Grant County; or that they, or any of them, would be beneficially interested by the payment into the county treasury of the two hundred dollars per annum, which respondent is charged by the relator with having promised said seventy voters to so pay, as an inducement to them to vote for him for the office of county judge.

Judgment affirmed.