<hr />

## CARROTHERS v. RUSSELL.

1. **Bribery**: WHAT CONSTITUTES: OFFER BY CANDIDATE FOR OFFICE. A candidate for a public office who, for the purpose of influencing voters, pledges himself, if elected, to pay into the treasury all the fees of the office allowed by law in excess of a certain sum annually, is guilty of offering a bribe, and such pledge not only invalidates the votes influenced thereby, but disqualifies him to hold the office if otherwise legally elected.

*Appeal from Jasper Circuit Court.*

TUESDAY, APRIL 20.

THE appellee contests the election of appellant to the office of recorder of Jasper county. At the October election, 1878, the parties were candidates for the office of recorder of the county. The appellee received twenty-five hundred and twenty-three votes, and the appellant received twenty-six hundred and twenty-five, being a majority of one hundred and two. The appellee contests the election upon the ground that the appellant offered to the electors of the county, for the purpose of procuring his election, a bribe. The alleged

offer of a bribe is said to consist in the fact that at the political convention at which the appellant was nominated as a candidate for the office, a resolution was passed in these words: "Resolved, that in view of the general reduction of wages and incomes, a general reduction of the salaries of all public officers, and a reduction of the contingent expenses of Jasper county is imperatively demanded; and, as the Republican legislature of our State has refused to take any steps toward reduction by law, we, therefore, to give expression to our desire in this direction, pledge our nominee for clerk, and require him, to conduct his office for the yearly salary of $1,500, without any compensation for so-called 'extras,' and that he pay his own deputy out of his salary; and that the recorder pay into the county contingent fund all fees in excess of $1,000 a year;" that the appellant was present at the convention and participated therein, and then and there, after receiving his nomination, with knowledge of the action of the convention in passing the resolution, stated publicly to the convention that he would abide by the resolution, and would pay into the treasury of Jasper county, for the benefit of the electors, all fees which should be received by him in excess of $1,000 per annum, and pay all expenses of his office out of the $1,000; that the fees of the office amounted to more than $2,000 per annum, as the appellant knew, and that it was his intention to offer to the electors more than the sum of $1,000 for each year, as a bribe to induce the electors to vote for him and elect him to said office.

The trial in the court of contest resulted in a judgment in favor of the contestant, and an appeal was taken by the incumbent to the Circuit Court, where a trial was had which resulted also in a judgment for the contestant. The incumbent appeals.

*Parsons & Runnells*, for appellant.

*Wright, Gatch & Wright* and *Ryan Bros.*, for appellee.

Carrothers v. Russell.

Adams, Ch. J.—The facts, as found specially by the jury, the correctness of which is not questioned, are that the con-

**1. BRIBERY: what constitutes : offer of candidate for office.** vention in which the incumbent was nominated adopted the resolution as alleged; that the incumbent publicly indorsed the resolution, and promised, if elected, to pay into the treasury all fees in excess of $1,000 for each year; that he made such promise to different voters during his candidacy, for the purpose of inducing them to vote for him, and that at least one voter was thereby induced to vote for him. In addition to the above facts specially found by the jury, it was proven, by undisputed evidence, that the fees of the office had been for many years largely in excess of $1,000 a year, and that such fact was known to the incumbent.

The court gave the following instructions:

" 3.  If you find from the evidence that the incumbent, as he is called, that is, B. J. Russell, one of the parties to this proceeding, was nominated for the office of county recorder by the convention held for the purpose of placing in nomination candidates for the various offices to be voted for at the general election of October of the present year; that the convention placing him in nomination passed the resolution which has been introduced in evidence; that the incumbent then and there publicly indorsed the resolution, and pledged himself to carry out the same; that the resolution was circulated throughout the county, and was used as an argument by the said incumbent and his friends for the purpose of inducing the electors to vote for him for the office named, then you are instructed that the incumbent, the said B. J. Russell, is disqualified thereby from holding the office; and in case you so find, your verdict should be that he is not entitled to the office.

" 5.  Promises to the people by candidates for public office, that if elected they will practice a rigid economy in the expenditures of their several departments or offices, are unobjectionable, and if the successful candidate fulfills his pledges in that behalf, he is entitled to praise and commendation.   In

such case the candidate only promises to perform a legal and a moral duty. But the proposition contained in the resolution in question has an entirely different aspect. It contains something more than a promise of rigid ecomomy. It contains a distinct proposition to the electors that if they will elect the particular candidate he will donate all fees received from the office, in excess of a certain sum, to the tax-payers of the county by paying the same into the county treasury. Such a proposition introduced into elections would be a mischievous element very nearly allied to bribery, and if the incumbent (Mr. Russell) indorsed the resolution and pledged himself publicly and privately that, if elected to the office, he would carry out the proposition, then as I have before explained he is, under the law, disqualified from holding the office; and this is so without regard to whether there were few or many votes changed thereby.

"6. It is of the highest importance that the purity of the ballot-box shall be maintained. And there can be no difference in principle between the sale of an office for a valuable consideration, and the disposing of it to the person who will perform its duties for the lowest compensation. The same objection lies to both. It is inconsistent with sound public policy and tends to corruption. It diverts the attention of the electors from the personal merits of the candidates to the price paid or the cheapness of the offer. If it were allowed it is evident that there would be the greatest danger of offices being filled, not by those best qualified, but by those whose purses enabled them to obtain it."

The giving of these instructions is assigned as error. By law the recorder is entitled to all the fees of his office as compensation. The question presented is as to whether a promise by a candidate for a county office to pay into the public treasury, if elected, a part of his compensation, where such promise is made to electors with the intent to induce them to vote for him, should be held to disqualify him to hold the office.

The Code, § 692, provides that an election to a county office may be contested, "when the incumbent has given or offered to any elector   *     *     *.  any bribe or reward in money, property, or thing of value for the purpose of procuring his election."

It is insisted by the appellant that a promise by a candidate to pay into the public treasury, if elected, a part or all of his compensation is not, within the meaning of the statute, an offer of a bribe to an elector.

It is true an offer to pay money into the public treasury is not in one sense an offer to pay money to an elector, the money in the treasury being public, and not individual, property.  But nearly all electors are tax-payers, and an offer to pay money into the public treasury, with the intent by such offer to influence the electors to elect to office the person making such offer, has all the effect of the offer of a bribe. It has also all the objectionableness of the offer of a bribe, and must be deemed to be such, within the meaning of the statute, unless it is saved from that character in view of the demands of the public interest.

It is by no means improbable that the convention which passed the resolution, and the incumbent who, indorsed it, did so upon the supposition that the public interest demanded a reduction in the compensation allowed by law to the person filling such office.   It may be, indeed; as was claimed, that the compensation allowed was larger than it ought to be, but this is a question for the legislature alone, and not for the courts, nor even for the electors, except as they may express their will through the legislature.

The system of bidding for an office attempted to be introduced by the incumbent has been repeatedly condemned by the courts.   In *Alvord v. Collins*, 20 Pick., 428, the court said: "We fully recognize the validity of the objection to the sale of offices, whether viewed in a moral, political or legal aspect.   It is inconsistent with sound policy.   It tends to corruption.   It diverts the attention of the electors from the

Carrothers v. Russell.

personal merits of the candidates, to the price to be paid for the office. It leads to the election of incompetent and unworthy officers, and on their part to extortion and fraudulent practices to procure a remuneration for the price paid. Nor can we discover a difference in principle between the sale of an office and the disposing of it to the person who will perform its duties for the lowest compensation. In our opinion the same objection lies to both." In *State, ex rel. Newell, v. Purdy*, 36 Wis., 224, a question arose substantially the same as in the case at bar. The practice of bidding for an office was held to be nearly allied to bribery, and was accordingly condemned. The court said: "If the course pursued by the relator should receive judicial sanction, it is more than probable that all those public offices which are deemed desirable would in time become the objects of pecuniary bids or offers, and in many cases would be bestowed upon the highest bidders, without much regard to their fitness for the positions thus purchased by them. At least such would be the inevitable tendency." It is true that in that case the court did not go further than to hold that the votes secured by the relator by reason of his offer should be rejected. If an offer like the one in question, when acted upon by a voter, becomes to him a bribe, it is, when not acted upon, the offer of a bribe; and under our statute the offering of a bribe by a candidate disqualifies him for the office. In our opinion the offer made by the incumbent was the offer of a bribe, and that by such offer he became disqualified for the office.

As supporting the views which we have expressed, see Hawkins' Pleas to the Crown, Ch. 67; *State, ex rel. Cash, v. Board Supervisors*, 38 Wis., 554; *State v. Church*, 5 Oregon, 375; *Cardigin v. Page*, 6 N. H., 190; *Tucker v. Aiken*, 7 N. H., 130; *Hall v. Gavitt*, 18 Ind., 390.

We think the instructions given by the Circuit Court expressed the law fully and aptly, and the judgment is

AFFIRMED.