## Owsley v. Hill, Jr.

(Decided October 2, 1925.)

### Appeal from Lincoln Circuit Court.

1. Appeal and Error—Grounds, Not Referred to or Discussed in Brief, Considered Abandoned on Appeal.—Grounds, not referred to or discussed in brief, will be considered abandoned on appeal.
2. Elections—Candidate's Statement Proposing Salary Reduction, Held Not to Violate Corrupt Practice Act in Proposing to Perform Duties for Less than Compensation Fixed by Law.—Proposal by. candidate for county attorney that fiscal court take $400.00 from salary of office and turn over same to road fund and restore office to old salary basis, transferring difference to road fund, did not violate Corrupt Practice Act, and . subdivisions,

where it appeared that fiscal court had not fixed salary under Ky. Stats., section 1072, for term of office to which candidate aspired, candidate simply running on salary reduction platform, and not proposing to perform dutes for less than legal compensation.

3. Elections—Statute, Prohibiting Candidates Entering Into Comtract to Vote in Support of Particular Thing or Measure, Does Not Refer to Candidate's Promises Made to Entire People.— Ky. Statutes, section 1565b-3, prohibiting candidate from entering into contract with corporation, association, or person to vote or support any particular thing or measure, in consideration of support at the polls, does not refer to promises made by candidate to entire people.

4. Elections—Contestee Held Entitled to Have Grounds of Election Contest Made More Definite and Certain.—A ground in election contest, charging contestee with formation of pool with others to corrupt voters, which did not allege that any voter was bribed, nor where money was used, and mentioned no candidate or friend of candidate who contributed to fund, or who used it, was indefinite and uncertain and contestee was entitled to have it made more definite and certain, in view of short time allowed by Ky. Stats., section 1550-28, to prepare defense.

JOHN D. CARROLL, JOHN S. CARROLL and J. S. OWSLEY for appellant.

P. M. McROBERTS, J. E. ROBINSON and GUY BRIGGS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

J. S. Owsley and T. J. Hill, Jr., were candidates for the Democratic nomination for county attorney of Lincoln county in the primary election held August 1, 1925. Hill received a majority of the votes, and was awarded the certificate of nomination. Owsley contested the nomination, and the trial court dismissed his contest. He has appealed. Owsley began his contest in proper time by serving upon Hill a very voluminous notice setting out five grounds of contest, one of which he admits in his brief to be without merit, and another he failed to refer to or discuss in his brief, hence it will be considered as abandoned. See McCorkle, et al. v. Chapman, et al., 181 Ky. 607, 205 S. W. 682. This leaves for our consideration three grounds, which are:

First, "The contestant, J. S. Owsley, notifies the contestee, T. J. Hill, Jr., that long prior to the filing

of his, contestee's, statement of his expenditures and
promises, etc., with the clerk of the Lincoln county
court, as required under section 1565b-4 of the Ken-
tucky Statutes, and prior to his filing his notification
and declaration of his candidacy for the Democratic
nomination for county attorney of Lincoln county,
to be voted for as a candidate at the primary August
1, 1925, in said county and state, with the clerk of the
Lincoln county court, as required by section 1550-7
of the Kentucky Statutes, and requesting the clerk
of the Lincoln county court to place his name on the
Democratic ballot as a candidate for said office, he,
the contestee, published in the Interior Journal, a
newspaper published in Stanford, Lincoln county,
Kentucky, his announcement as a candidate for the
Democratic nomination for county attorney of Lin-
coln county, and in his said card of announcement he
stated over his own signature the following: 'It is my
purpose to do all in my power to aid and assist the
fiscal court that you elect in handling the affairs of
the county in a good business manner. It is imper-
ative that something be done by the fiscal court to
put the public roads of the county in better travel-
ing condition than they are now in, and I think the
court can put the public roads of the county in prac-
tical condition suitable for traveling without any in-
crease of taxation, by economically and wisely using
the road revenue now available from all sources. I
propose to have the fiscal court to take from the
county attorney's salary $400.00 per year and place
same to the credit of the road fund.' And said con-
testee signed said article with his own signature, 'T.
J. Hill, Jr.' And the contestant notifies the contes-
tee that the said statement was made with the delib-
erate intention to bribe and influence the voters of
Lincoln county, Kentucky, to vote for him for county
attorney, and used said statement to personally per-
suade persons and voters to vote for him. That on
the 17th day of July, 1925, said contestee likewise
had published and paid for in the same paper, to-wit,
the Interior Journal, of Stanford, Lincoln county,
Kentucky, a write-up of himself and his platform,
and among other things said article contained the
following language: 'His program in the present
campaign should receive the approval of the voters
in every district of the county. He favors restoring

the old salary to the county attorney, for which he is an aspirant, and transferring the increase of $1,-600.00 during the term to the repairing and construction of public roads.' And contestant notifies the contestee that he had same printed for the purpose of deliberately influencing and bribing the voters of Lincoln county to vote for him for county attorney. The contestant further notifies the contestee that both his announcement referred to herein and his write-up, to give to the road fund $400.00 of his salary, was a direct offer of a bribe and expenditure of $1,600.00, which was in excess of the amount allowed under the Corrupt Practice Act of the Kentucky Statutes to be expended by any candidate for a county office, and that both of said statements were contrary to and in violation of the spirit of public policy, and also violated section 1565b-3 of the Kentucky Statutes.

Second, ''The contestant further notifies the contestee that his statement of expenditures and promises filed with the clerk of the Lincoln county court was false and untrue at the time that he made same, and that he expended for the purpose of securing his nomination for the office of county attorney large sums of money vastly exceeding the sum of one thousand dollars, which is the amount allowed under section 1565b-16 of the Corrupt Practice Act of the Kentucky Statutes.

''The contestant, J. S. Owsley, notifies the contestee and alleges that said contestee, T. J. Hill, Jr., spent in the election, and others spent for him, with his knowledge and consent, more than one thousand dollars, which is the maximum amount for purely legitimate purposes allowed by the Kentucky Statutes for a county office, and that he failed to include in his statement of expenditures and promises filed on the 18th day of July, 1925, with the clerk of the Lincoln county court, the clause in his card of announcement published in the Interior Journal of Stanford, Kentucky, referred to above, to-wit: 'I propose to have the fiscal court to take from the county attorney's salary $400.00 per year and place same to the credit of the road fund;' and failed likewise to put in said statement of expenditures as filed with the clerk of the Lincoln county court on the 18th day of July,

1925, the write-up of himself and his platform referred to above, and which contained the following language: 'His program in the present campaign' (referring to T. J. Hill, Jr.) 'should receive the approval of the voters in every district of the county. He favors restoring the old salary paid to the county attorney, for which office he is an aspirant, and transferring the increase of $1,600.00 during the term to the repairing and construction of public roads.' "

Third, "The contestant further notifies the contestee, T. J. Hill, Jr., that he, in connection with candidates for other nominations, formed a slate and pooled their money in a 'jack-pot' to be used in the election, and especially on the election day, to bribe and otherwise corrupt voters to support the candi--dates who were members of the pool, and that he himself and his friends contributed a large sum to such fund, amounting, as the contestant believes, to the sum of $2,000.00, which was used by his friends and 'strikers' both in the pool and otherwise, at the various precincts of Lincoln county on the primary election day, in carrying out the purposes for which it was contributed, with his knowledge and consent, and that all of this was in direct violation of the provisions of the Corrupt Practice Act, known as article XIIa and its subsections, of the Kentucky Statutes."

The court sustained a demurrer to the first and second grounds, and required him to make his third ground more specific, and upon his failure so to do, dismissed his contest.

In support of his first ground he relies upon two cases, one from Wisconsin, the other from Ohio. The Wisconsin court, in State v. Purdy, 36 Wis. 213, 17 A. Rep. 485, in considering a case in which a county officer announced in his circular to the voters and taxpayers that he was willing to discharge the duties of the office for a less salary than that fixed by law, although there was no Corrupt Practice Act in that state at that time, said, in condemning and holding illegal the offer of the candidate:

"If the course pursued by the relator should receive judicial sanction, it is more than probable that all those public offices which are deemed desirable, would, in time, become the objects of pecuniary bids or offers, and in many cases, would be bestowed upon

the highest bidders without much regard to their fitness for the positions thus purchased by them. At least such would be the inevitable tendency. The evils of such a condition are of very grave import, and we are warned by the experience and the wisdom of centuries to avoid them. When our elections to fill public offices cease to express the free, intelligent and unbiased judgment and choice of the electors; when they shall be controlled or materially influenced by pecuniary offers made by the candidates, whether to the electors, or to the municipality (which is but the aggregation of the electors), a most vital condition of free government will be disregarded. The tendency might be, in such case, to banish from the public service all who will not pay for the privilege of being employed therein, and to fill it with less scrupulous, and therefore less trustworthy and less deserving men. Elections by the people might thus cease to express the free and unbiased judgment and will of the people, but might be controlled by mercenary considerations, either public or private, or both, and would thus speedily and justly fall into public contempt.

"So far as we are advised, no judicial tribunal has given any countenance whatever to any practice or act which tends in that direction, but the courts have steadily held that popular elections must be kept free from any taint of corruption, and from all improper or unlawful influences whatever. We have no disposition to depart from this line of adjudication. On the contrary, were the opposite doctrine asserted in any of the cases, we should not follow·them. We would not hold that a man may buy a public office, especially a most important and responsible judicial office, just as he would buy a horse at auction, that is, by offering to pay more for it than any other person is willing to pay. We can never give the sanction of this court to a doctrine so pernicious."

In the Ohio case, Prentiss v. Dittmer, 93 Ohio St. 314, 112 N. E. 1021, L. R. A. 1917B 191, there were decided questions arising in a contest filed by Dittmer against Prentiss. These men were candidates for common pleas judge of Henry county. Prentiss, as such candidate and prior to the election, printed and widely pub-

lished and circulated, by mail and otherwise, various circulars promising to accept smaller salaries than would be legally due; that he would accept, in the event of his election, only the portion of the salary payable out of the state treasury; that he would perform his official duties for such sum, and would decline to accept any portion of the statutory portion of the salary payable out of the county treasury. Other statements in the circulars were in support of the combination of the common pleas court with the probate court at a saving of $2,150.00 to the county by the abolishment of the latter court; and if the courts should not be combined by the popular vote at such election, he agreed not to accept the $625.00 lawfully payable out of the local treasury, nor the additional amount of $1,000.00 payable from the same source in the event of combination, but to accept only the $3,000.00 remuneration per annum payable out of the state treasury, and to perform, in the event of his election, his judicial duties for that sum.

Section 26 of the Ohio Corrupt Practices Act, section 5175-26 of the General Code, provides that any person is guilty of a corrupt practice if he, in connection with or in respect of any election, contributes, or offers to contribute, any money or valuable consideration for any other purpose than those detailed therein. It provides further that any offer to contribute or expend any money or thing of value for any purpose whatever, except as therein provided, "is hereby declared to be corrupt practice and invalidates the election of any person guilty thereof."

After quoting the section copied, the court said:

"It is but little less reprehensible that, for the purpose of inducing election, he should promise to refund to the community as a whole that portion of the salary he should receive from the county, than to offer to contribute to the taxpayers individually their *pro tanto* proportion of the amount of salary forgiven. In the latter event the taxpayer is required to pay less taxes, irrespective of the personal fitness of the candidate. . . .

" 'The theory of popular government is that the most worthy should hold the offices. Personal fitness—and in that is included moral character, intellectual ability, social standing, habits of life, and political convictions—is the single test which the law

will recognize. That which throws other considerations into the scale, and to that extent tends to weaken the power of personal fitness, should not be tolerated. It tends to turn away the thought of the voter from the one question which should be paramount in his mind when he deposits his ballot. It is, in spirit at least, bribery, more insidious, and therefore more dangerous, than the grosser form of directly offering money to the voter.' ''

The court further said:

"There is a wide difference between a promise of this character and those multifarious pledges made by candidates in the interest of reform, economy, and a rigid and effective administration of office, in compliance with their official oaths. The latter are made in the public interest, and are consistent with personal fitness; the former savors of vicious tendencies, involving a personal pecuniary consideration offered by the candidate in order to accomplish his election, in which the test of fitness is not an element."

Upon the authority of these cases the appellant very strenuously insists that his opponent has violated the provisions of our Corrupt Practice Act and that the demurrer to his notice should have been overruled. These cases are from other states, hence they do not bind us, yet they might be very persuasive if the facts were the same. Section 1072 of our statutes provides: "The county judge and county attorney shall receive an annual salary, to be fixed at a reasonable amount by the fiscal court, and paid in monthly installments by the county." At the time the contestee made his announcement which is complained of in this action, the salary of the county attorney for the term to which he was an aspirant had not been fixed. It is obvious from a reading of the record that at the time the salary of the county attorney was fixed for the term now ending, it had been raised by $400.00 over the salary prevailing prior thereto. The announcement of the contestee and the subsequent newspaper interview, when read in the light of these facts, which were commonly known to the voters of his county, plainly mean that the contestee was running on a platform of fixing the salary, when the time came for it to be fixd, at the old rate rather than the new rate. In other words, he was simply

running on a platform of salary reduction. This clearly distinguishes his acts from those condemned in the Ohio and Wisconsin cases where the candidate proposed to perform the duties of his office for compensation less than that fixed by law. The contestee here did not propose to perform the duties of his office at a rate less than that fixed by law, but simply proposed to fix that salary at a time when it came to be fixed at a rate less than that which had prevailed during the preceding term.

By section 1565b-3 of the statutes, it is made unlawful for any candidate to agree or enter into any contract with any corporation, association or person to vote for or support any particular thing or measure in consideration of the vote or support, moral or financial, of any such corporation, association or person, and it shall be unlawful for any corporation, association or person to demand that any candidate for office shall promise or agree in advance or shall make any contract, oral or written, to support any particular individual, thing or measure, in consideration for the vote or the support, financial or moral, of such corporation or person, in any election, primary or nominating convention. This agreement or contract must be made with a corporation, association or person. It does not, and cannot, in reason, refer to any agreement made by the candidate to the people at large. There was never a candidate for Governor, congress or legislature who did not, in his card of announcement, and in his speeches, promise the people, and agree with them that if elected he would vote for and support some particular thing or measure. If the statements, agreements and promises, made to the people at large by the candidate, come within the prohibitions of this act, then every official of this Commonwealth is subject to its penalties. We cannot feel that this statute refers to promises made the entire people, and to hold otherwise would prevent any candidate from pledging himself to support measures designed to correct evils of which the people were complaining. A promise made a man or any small party of men is different from a promise made to the entire populace, from which all may derive a benefit.

In the case of Hall v. Marshall, 80 Ky. 552, 4 Ky. L. R. 502, this court upheld an election removing the court house of Ballard county from Blandville to Wickliffe, although it was shown that shortly before the vote was taken, Norton, a resident of Louisville, and S. Jenkins and others, residents of Ballard county, owning land in

the vicinity of Wickliffe, published and had circulated a circular, in which they agreed to build a courthouse at their own expense, and convey the grounds, and with it the building, to the county. This circular was headed, "Save taxation;" "Vote for removal to Wickliffe;" "Buildings and grounds given free of cost to the county." The commissioners to select a site for our state capitol were perhaps influenced by this proposition made to them:

> "Whereas, we, the underwriters, do claim sundry out-lots, adjoining the town of Frankfort, which is now proposed to the commissioners for fixing the seat of government; we, the underwriters, do therefore agree to lay off our several out-lots into small lots and streets, agreeable to the original plan of said town, and to vest one-half thereof in the state of Kentucky, forever, and a division to be made by giving the state the first choice of a lot, ourselves the second, and so on alternately."

This court, however, in Brown v. Anderson, 17 Ky. (1 T. B. Monroe) 198, upheld the writing and sustained a title derived from the state by virtue of it. For these reasons the demurrer to ground one was properly sustained.

Owsley's second ground of contest is rested upon the same thing as the first and must fail for the same reasons.

To contestant's third ground of contest, the trial court overruled the contestee's demurrer, but held the allegations were too indefinite and ordered the contestant to make this ground more specific, and, as he failed to do so, his contest was properly dismissed. He is now complaining of that action of the court. The contestant alleged that this money was contributed to bribe and otherwise corrupt voters to support the candidates who were members of the pool. There is no allegation that any voter was bribed, nor is there any allegation setting out just how this money was used to corrupt the voters. This ground gave contestee no notice with whom he was charged to have former this pool, it is silent as to the precincts where this money was used, and mentions no candidate or friend of a candidate who contributed to the fund; nor does it name any friend or striker who used it. By section 1550-28 of the statutes, these contests must be speedily tried, and in the short time allowed the contes-

tee in which to prepare his defense, he is certainly entitled to know these things. It is a matter of common knowledge that many persons, temporarily away from the county of their residence, return to it on election day to vote and to work for their friends. How could the contestee, with this vague and indefinite notice, prepare his defense? How could he know whom to summon to contradict statements coming within the scope of the general allegations of this notice? It would be simply impossible for him to be prepared to meet all the testimony that might be offered under this general allegation. To do so he would be compelled to summon and bring before the court, ready to testify, every candidate in the primary election and every friend he had in every precinct of the county. Such preparation could not be made; yet such. preparation would be necessary under the general allegations of this notice. If the contestant could conscientiously swear that the contestee formed a pool with another candidate, he certainly knew the name of the candidate, and if he could swear that some friend of the contestee in some precinct of the county used some of this pooled money to corrupt voters, he certainly knew the name of this friend, this precinct and some of the voters corrupted, and he should have set these things out in his notice, so that the contestee could be prepared to defend himself.

In the case of Williams v. Hayes, 175 Ky. 170, 193 S. W. 1046, this court said: ''The practice is well settled that where a petition in an election contest is objectionable for want of definiteness, it should be made more specific.''

It is ordered that the judgment be affirmed, and that mandate issue immediately.

The whole court sitting.

Judges Thomas, Settle and Clarke dissenting.

### DISSENTING OPINION BY JUDGE THOMAS.

· I regret that I find myself unable to agree with my associates who concur in the opinion wherein it is held that the promises as contained in the publications, speeches and statements of the contestee, Hill, with reference to his salary as county attorney of Lincoln county if he should be nominated and elected did not constitute such illegal conduct and bribery as to deprive him of his nomination.

I do not understand the opinion to hold that if contestee had expressly stated and represented to the voters in terms that he would donate a part of his salary to the county to be placed either in its general or any special fund, he would not be guilty of such a species of bribery as to establish the ground of contest to which a demurrer was sustained by the trial court and which judgment the majority opinion affirms.

Indeed, the cases cited in the opinion, and from which opinions excerpts are therein inserted, uphold such grounds of contest in strong, vigorous and logical language. But those opinions are not the only ones sustaining the same ground. Others of like import are: Attorney General v. Collier, 72 Mo. 1; Carruthers v. Russell, 53 Ia. 346; People v. Bush, 32 N. Y. 456, and Diehl v. Totten (North Dakota), 155 N. W. 74. In the annotation to the cited case of Prentiss v. Dittmer, published in 1917B, L. R. A. 191, a number of other cases are collated wherein such promises of a reduction of salary by the candidate were held to be a species of bribery so as to render all votes obtained as a result of them invalid, but under the practice of those jurisdictions it was furthermore held that it was incumbent on the contestant to allege and prove that enough votes were so influenced to reduce the number received by the contestee below a majority or a plurality: In other words, the court in those cases held that it was bribery and unlawful for a candidate to make such promises, but that before he could be deprived of his nomination or election, it must be shown that the votes sought to be taken away from him were cast for him because of the promises, while in the first cases cited above the number of votes so influenced was held to be immaterial, and the latter rule prevails with us, especially since the enactment of our "Corrupt Practice Act" against bribery and corruption in elections. I have been able to find no authority to the contrary, and if the decision of the question depended entirely upon precedent there could be no escape from the conclusion that such promises of a reduction of salary were sufficiently corrupting in their tendencies as to constitute bribery within the meaning of the statute forbidding it in elections.

But, independently of those adjudications, I think it requires no argument to show that no such practice should be tolerated and that courts should not hesitate to characterize it as bribery, followed by the conse-

quences of withholding from the one who engages in it all benefits that he may, or would actually, receive therefrom. As said in some of the opinions referred to, to hold otherwise would permit the various elective public offices to become filled by those who would purchase their election at the lowest bid, and the selection of agents for carrying on the public service, instead of being done with a view to efficiency, would degenerate into a public auction wherein the performance of important public duties was let to the lowest bidder, and eventually public offices would be occupied only by the opulent and ambitious officer who could afford to serve for only the pittance of honor attached to the office, or by the designing grafter intending to obtain his remuneration from those seeking to escape the consequences of an honest administration of the law—and in either case good government would soon vanish. Without further elaboration, I am thoroughly convinced that if this case had been as above indicated, there could be no doubt of the sufficiency of the grounds of contest.

But as I understand the opinion, it holds that the promises by contestee were not sufficient to constitute bribery within the contemplation of the rule of the cases, *supra,* and for that reason the demurrer to the paragraph was properly sustained. However, I do now find myself able to agree with my brethren in that conclusion. In the signed and published announcement of appellee, and which is incorporated in the opinion, he said, *inter alia:* "I propose to have the fiscal court to take from the county attorney's salary $400.00 per year and place same to the credit of the road fund," which statement followed a reference to the necessity of good roads and which in turn was a popular and appealing subject and one of universal agitation throughout the Commonwealth at the time of the election. That statement embodies nothing more nor less than a promise or an agreement that $400.00 of the annual salary attached to the office should be taken away from contestee if he was elected and devoted to the construction of roads in the county. The fact that he also stated that he expected to enlist the services of the fiscal court in order to enable him to perform his promise, does not remove the purpose he had in view, and does not detract from the corrupting influence of the promise, and the same may be said concerning the other publication inserted in the opinion, which does not seem to differ very materially from my conclusion.

It is stated, however, in the opinion that the promise to serve for a reduced salary in order to be visited with the consequences of bribery must be made to an office that has attached to it a *fixed* salary, and that inasmuch as (as held in the opinion) there was no such fixed salary at the time the promise was made by the contestee, he was guilty of nothing that could affect his nomination even under the opinions, *supra,* but which reason, to my mind, is not only fallacious, but is based upon an erroneous assumption of fact. It is the duty of the fiscal courts of all the counties to fix salaries 'for county attorneys, and they remain at that sum until they are changed, but which cannot be done after the taking of office under the Constitution prohibiting either reduction or increasing salaries after that time. When contestee made such promises there was necessarily an order of the fiscal court fixing the salary of the county attorney, and it would remain so fixed, unless subsequently altered by the fiscal court, and which, as we have said, would have to be done before he became installed in office. Therefore, when the opinion says that there was no salary then fixed, it is in error as to the facts.

If, however, there was no fixed salary, but the compensation should arise solely from fees and commissions, or both, then it would be incompetent to agree or promise to serve for a less sum than what the earnings on that basis would aggregate, since the vice in the promise does not consist alone in relinquishing a part of the fixed *salary* of the office as it does in promising to serve for less than the legitimate compensation for the service as adjusted by law.

The opinion advanced in this dissent erects no barrier to the advocacy of economy in public affairs, including a general reduction of salaries, since in that case the platform of the candidate is directed toward remedying what he conceives to be a species of extravagance in the way of remuneration for all offices; while in the character of promise made by contestee, only the amount of *his* salary is affected and he promises that his proposed reduction thereof shall go to the augmentation of a fund for the furtherance of a highly cherished public purpose and one which he knows will be the most calculated to influence voters. In other words, I can see no difference between the promises of contestee in this case as made by him and one wherein if he had expressly stated that he

would take $400.00 of his salary and donate it to the road fund.

Since there can be no greater enemy of good government than the one who attacks and destroys the integrity of elections, which are our machinery for the selection of officers, and believing as I do that the opinion fails to fully appreciate the debauching effects of such promises as are here involved, and being also mindful of the further fact that elections should be clean, free from all corruption and untarnished, I am constrained to register this my dissent. Chief Justice Clarke and Judge Settle concur herein.