## Williams v. Commonwealth.

Dec. 5, 1944.

734

W. J. Stone for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

An indictment was returned by the Grand Jury of Bell County at the regular May, 1944, term of the Bell Circuit Court against Chester Williams, charging him with the crime of storehouse breaking. This indictment also alleged a former conviction and sentence in the penitentiary for one year. In the same term of court, in which the above indictment was returned, he was tried, convicted and sentenced to two years in the State Penitentiary, from which he appeals to this Court and urges as grounds for reversal the following: (1) Because the verdict is not sustained by sufficient evidence; (2) because the court admitted incompetent evidence offered by the plaintiff and allowed to go to the jury, to which the defendant objected and objected at the time; and (3) the court erred in his instructions to the jury and failed to give the whole law of the case.

The appellant seems to have abandoned grounds two and three of above and bases his entire brief on ground one, and, consequently, since he did not refer or discuss grounds two and three, same will be considered abandoned on appeal. Owsley v. Hill, 210 Ky. 285, 275 S. W. 797. The appellant contends on ground one that the evidence was not sufficient to convict, and not ample to sustain the verdict of the jury.

The evidence in the record discloses that George Martin owned and operated a drygoods store in the City of Pineville, Bell County, Kentucky; that on the night of March 29, 1944, his store was broken into; that the entry was made in the rear of the store by cutting a screen and punching out a glass pane in the rear door. The evidence shows that Perry Siler, a druggist who lived in an apartment directly behind Martin's store,

on the night in question, was disturbed by the sound of the cutting of screen wire and the breaking of glass, and immediately called officers. Soon thereafter, Ceph Faulkner, Chief of Police of Pineville, together with Houston Greene, arrived at the store—Houston Greene going to the front of the store and Ceph Faulkner to the rear. When Houston Greene rattled the front door, a boy came running out the back door and started down an alley, whereupon Ceph Faulkner ordered him to halt, which order was disregarded, and the Chief of Police shot at him. Immediately thereafter, Jim Bingham, night Chief of Police, together with another officer by the name of Ballinger, went to the home of the boy, where, after waiting about three minutes, the appellant, Chester Williams, arrived. Chester was immediately arrested and placed in the rear seat of the officers' car, at which time he was asked if he had not been shot, whereupon he replied, "No, I am not shot." The officers immediately drove to the police station, and upon arrival at the police station, the appellant, dropping his head to one side, said: "I am shot. Take me to the hospital."

The appellant contends that there was not sufficient evidence to connect him with the crime, and in support of that he cites the testimony of George Martin, who made no claim that he knew who broke into his store; that Perry Siler, while he saw a boy running from the store, stated he did not recognize him; that the Chief of Police, Faulkner, saw a boy running out of the back of the store, called on him to stop, fired a shot at him with the intention of hitting him in the leg, but did not recognize him; and that the testimony of Shelby Thompson, who testified that he passed by the store on the night in question and the lights were not on, but that later on in the night he again passed by the store when the lights were on, and that he saw a boy in the store who ran out and down the alley, was not convincing or decisive. In answer to the question pertaining to his identification, Thompson testified as follows:

"Q. 7. Was that the person you saw in the store? A. His face looked like that."

The appellant was the only witness offered in his own behalf. He denied breaking into the store; admitted a prior conviction on the charge of storehouse breaking, and attempted to explain his presence in the

alley at the rear of the store on the night in question. The testimony of the appellant himself; his presence in the alley at the time in question, together with the surrounding circumstances, obviously, was sufficient to take the case to the jury. He admittedly was in the alley at the rear of the store. Ceph Faulkner saw a boy run from the back of the store and shot at the boy he saw running. The appellant was shot, and admittedly shot while he was in the alley. He took a circuitous route to his home and stated he didn't travel the streets because he was "scared to." When first arrested, he denied he had been shot, and after being able to go no further, he finally said: "I am shot. Take me to the hospital."

In view of the above, it appears to this Court that there was sufficient evidence to submit the case to the jury and to sustain the verdict. This court will avoid an intrusion on the functions of the jury and leave undisturbed its verdict unless the same is so palpably against the evidence that it shocks the sense of justice and results in the compelling conclusion that it was based on passion and prejudice instead of a true consideration of the facts. See Brown v. Commonwealth, 226 Ky. 255, 12 S. W. 2d 820, and numerous cases cited therein.

Judgment affirmed.