## SMITH, PEDEN & CO. V. JEFFERSON COUNTY.

Delivered May 13, 1897.

**1. Written Instrument—Court Should Construe—Expert Evidence Inadmissible, When.**

It is the duty of the court to construe written instruments, and expert evidence as to their meaning is inadmissible where the meaning can be determined from the face of the writing.

**2. Construction of Contract.**

A contract calling for an iron fence forty-three inches in height does not necessarily require that the pickets should be forty-three inches in length, where it is shown that such fences are usually constructed so that the pickets are two inches above the ground at their bottom end, and the illustration or cut of the fence exhibited when the contract was made shows a fence constructed in that way.

**3. Same—Immaterial Variance.**

An immaterial variance as to the thickness of the pickets between those furnished and the ones called for in the contract, will not constitute a breach of contract.

**4. Same—Estoppel.**

In an action against the county for the contract price of a fence, an order of the Commissioners' Court and a letter of the county judge rejecting the fence on the ground of a single specified objection, will not estop the county from asserting other grounds of objection and noncompliance with the contract in defense.

APPEAL from Jefferson.  Tried below before Hon. STEPHEN P. WEST.

*Greer & Greer,* for appellants.

*O'Brien, Bordages & O'Brien,* for appellee.

WILLIAMS, ASSOCIATE JUSTICE.—Appellants brought this suit to recover the contract price of an iron fence, put up by them around the yard of the courthouse of defendant county.

The defenses were: First, that the written instrument sued on did not truly express the contract between the parties as it was agreed upon, but that, by the fraud of plaintiffs, or by the mutual mistake of them and of defendant, it had been made to provide for a fence different in material particulars, which were stated, from that for which defendant actually stipulated and which plaintiff agreed to furnish; second, that, in particulars specified, the fence furnished was different from and inferior to that for which the writing stipulated, and that it had been rejected by defendant for that reason.

At the trial both issues were submitted to a jury, who found in favor of plaintiffs on the first issue, that the written contract was the contract agreed to; but found for defendant upon the second, that the fence furnished did not comply with the written contract.

The written contract described the fencing to be furnished as follows: Nine hundred and sixty lineal feet of iron fencing, including the measurement of one double drive gate and four single walk gates and

fourteen corner and gate posts as per cuts shown on page 13 and description on page 14 of Van Dorn Iron-works Catalogue No. 42, viz: Posts No. 9 and fencing No. 58½, size A, standard height, 43 inches from ground, horizontal rails 1½x⅜ inches. Pickets ⅝ inches diagonal (superior to any ⅝ inches round in use). The catalogue referred to contained an engraving showing a section of the fence in which the pickets appeared to be set diagonally in the railing; that the ends of the pickets did not reach the ground, and the post No. 9, displayed, appeared not to be of one size throughout its length, but of different sizes at different points. On the reverse side of the leaf a printed description of the fence No. 58½, size A, and post No. 9 was given, stating: "Standard height 43 inches from ground. Horizontal rails 1½x⅜ in. Pickets 7-16 in. square (⅝ diagonal), superior to any ¾ round fence in use. Posts shown with fence are cast iron, 6 inches in diameter."

The evidence all agreed that the horizontal railing furnished complied with the contract. The controversy was as to the height of the fence and the thickness of the pickets and posts.

As to the height of the fence, it was shown on the part of the defendant that the pickets were less than forty-three inches long, and that at the time of trial the fence was less than forty-three inches high. But plaintiff offered evidence to show that, in building an iron fence, the pickets are never rested on the ground, but that the fence is brought to a level on the top, running from corner to corner, and that to constitute a fence forty-three inches high, pickets about two inches less than forty-three inches long would be used and lifted from the ground at the corners so as to reach the required height, and that this fence had been built in that way, but that defendant had caused its yard to be filled with dirt and graded, so that the fence was now less than the stipulated height.

Concerning the thickness of the pickets, the witnesses all agreed that they were seven-sixteenths of an inch square, and some of them stated that they were five-eighths of an inch, measured diagonally from corner to corner, but others stated that they lacked from one-thirty-second to one-sixty-fourth of being five-eighths of an inch in diagonal measurement.

The posts, in the greater part of their lengths, were less than six inches, and only four inches in diameter; but the parts to be inserted in the ground were six inches and upwards in diameter, and there is evidence that ornamental parts at the top are as much as six inches thick.

The evidence is, that the part of the post standing out of the ground is only about four inches thick, except the knob at the top.

The court, over objection of plaintiffs, permitted defendant to prove by witnesses, who qualified themselves as expert workers and dealers in iron and iron fencing, that the language of the catalogue meant that the part of the posts out of the ground was to be six inches in diameter, and that, to comply with the contract, the part of the post which was exposed should be of that thickness.

We think this ruling was erroneous. The writing signed by the parties

and the catalogue referred to in it constituted the contract, and it was the duty of the court to determine its legal effect. The terms descriptive of the posts were not such as required the aid of an expert to ascertain their meaning. The post contracted for was the post No. 9 manufactured by the company referred to, and if that was furnished, the contract was complied with. It is true one of the terms of description, or one of the representations, as it may be termed, was that the posts were six inches in diameter, but the catalogue showed that the post No. 9 was not, throughout its length, of uniform size. It could not be six inches thick at some points without being thicker than that at others. And the parties did not stipulate that it should be other than the post which that company manufactured, answering the description of the catalogue, or that at any particular part it should be six inches in diameter. The question therefore is simply whether or not the post is that which that company manufactures and sells as its No. 9 post. The question is not one of fraud or misrepresentation, but only one of construction. If the parties had simply stipulated for a post six inches in diameter, the question would be different. But they contracted for a particular post, described as six inches in diameter, but also described as of uneven size at different parts. The opinions of the witnesses, as to the meaning of the contract, were inadmissible, and gave an incorrect interpretation of the terms used, and for this error the judgment must be reversed.

In determining the question whether or not the fence is of the height stipulated, the length of the pickets does not necessarily control. If it is true that an iron fence forty-three inches high, properly constructed, would consist of pickets of substantially the length furnished, lifted a reasonable height from the ground level, and if this fence, when erected, was the proper height, thus considered, then in this particular it would be in compliance with the agreement. It is the height of the fence and not the length of the pickets that is provided for.

The contract and catalogue taken together show that the pickets contracted for were to be seven-sixteenths of an inch square, measuring five eighths of an inch diagonally. That a perfect square, the sides of which are seven-sixteenths in length, would measure diagonally, from corner to corner, five-eights of an inch, is necessarily true. We should suppose, however, that in molding a picket the corners could not be so sharply and accurately formed as to attain mathematical exactness, and that the unsubstantial variation from the stipulated measurement which would necessarily attend the skillful manufacture of the pickets would be contemplated in making the contract. If the shortage in diagonal measurement was only such as thus arose, it would constitute no cause for rejection of the fence. In other words, if the pickets were substantially such as the Van Dorn Iron-works Company manufactured in its fence No. 58½, and were practically of the dimensions stipulated, that would be considered a compliance with the agreement; but if they were materially less than the stipulated size, the defense should be sustained. Whether they were or were not is a question of fact for the jury.

We do not think that the fact that the order of the Commissioners' Court and the letter of the county judge, rejecting the fence, mentioned only the pickets as objected to, estops or precludes the defendant from showing that in other respects the fence did not comply with the contract.

The issue as to fraud and mistake made and tried in the court below is not involved in our discussion. What we have said relates only to the construction of the contract, supposing it to be that upon which the parties agreed.

The judgment is reversed and the cause remanded for a new trial upon all the issues.

*Reversed and remanded.*