## Kelley, et al. v. Ivyton Oil & Gas Company.

(Decided October 10, 1924.)

### Appeal from Magoffin Circuit Court.

1. Mines and Minerals—Lessors by Accepting Rentals Waived Completion of Well at Time Fixed.—By accepting payment of rentals after gas well was completed, lessors waived completion of well within time fixed in lease.

2. Mines and Minerals—Completed Well is One Drilled to Formation in which Oil in District is Usually Found.—A completed oil well, within lease requiring one to be completed within certain time, is one drilled to formation or sand in which oil or gas in that district is usually and commonly found, whether found in hole or not.

3. Mines and Minerals—Evidence Held to Show that Well was Completed.—Evidence held to show that well producing some oil and gas was a completed well within meaning of lease requiring completion within certain time.

4. Contracts—Parties to Unilateral Contract Bound by all Executed Parts.—Parties to unilateral contract are bound by all executed parts thereof, and want of mutuality is no defense to that extent.

5. Mines and Minerals—When Well was Completed Lease Obligation to Pay Rent During Delay Ceased.—Whenever well was completed under lease held that obligation to pay $2.00 per day rental for privilege of deferring completion of well ceased.

6. Mines and Minerals—No Forfeiture for Default in Rental which Lessor Refused to Accept.—Oil and gas lease could not be forfeited for failure to pay annual rental, where lessors announced they would not accept it, and refused to take registered letter from post office for fear it contained check in payment.

7. Mines and Minerals—Forfeiture of Lease Not Decreed Because of Arrears of Rent or Royalty, Except on Clear Language.—Forfeiture of oil and gas lease will not be decreed because of arrears of rent or royalty, except upon clear language in lease.

H. M. HOSKINS and ROSCOE VANOVER for appellants.

W. R. PRATHER, MATT O'DOHERTY and T. R. CARTMELL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On October 25, 1919, J. V. Kelley and wife, Cora E. Kelley, were the joint owners of a tract of land in Magoffin county which they claimed to be about 125 acres, but according to the proof in the record only contained between fifty and seventy-five acres. On that day they executed an oil and gas lease upon their farm to J.

B. Nay, who agreed therein to pay the lessors, who were plaintiffs below, one-eighth of all the oil produced under operations provided for in the lease and to pay plaintiff $100.00 annually in advance for each paying gas well found thereon while gas was being used off the premises. It was further stipulated and agreed that ''if no well be completed on said land on or before the 25th day of January, 1920, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Salyersville National Bank at Salyersville, Ky., or its successors, which shall continue as the depositary regardless of changes in the ownership of said land, the sum of two dollars per day, which shall operate as a rental and cover the privileges of deferring the completement of a well for as many days as is necessary to complete said well.'' Nay sold and transferred the lease to the appellee and defendant below, Ivyton Oil & Gas Comuany, on January 18, 1921, and plaintiffs filed this suit on June 29 of the same year seeking to cancel the lease upon the ground that it had been abandoned by Nay before he transferred it to the defendant and that neither the latter nor Nay had complied with its terms by either completing a well by the 25th day of January, 1920, as therein provided for, or paying plaintiffs two dollars per day as stipulated rental for the privilege of deferring the completion of the well on or before that time, as was also stipulated in the lease. The answer denied the grounds of forfeiture and pleaded estoppel on the part of the plaintiffs to insist thereon, which was properly controverted, and upon submission, after the taking of proof, the court dismissed the petition, from which judgment plaintiffs prosecute this appeal.

The alleged ground of abandonment as justification for the forfeiture insisted on is itself abandoned on this appeal, since no reliance is had on it in brief of counsel for appellant, but were it otherwise we find ourselves unable from the evidence heard on the submission to agree with that contention. It is true that the well on being completed on January 24, 1920, as we will hereafter point out, was not tapped or connected with any piping so as to utilize the 1,900,000 feet of gas produced therefrom, but all that was done by the middle of the following April after a pipe line had been constructed with which the well could be connected, and at which latter date the then owners of the lease paid plaintiff the first $100.00 an-

nual rental for the use of the gas. By accepting that payment plaintiffs waived the completion of the well by the time fixed in the lease and thereby accepted the completion of the well as of that date, even if it had not been completed within the time fixed in the lease; so that, in no event, are we prepared to uphold this ground.

Upon the contention that there was never any completed well drilled on the lease, such as was contemplated by the contract, we find the undisputed testimony to be that the generally accepted oil producing sand in that field was what is known as the Weir sand, generally found at a depth of about 1,100 feet, and the well drilled by defendant's predecessor in title was 1,109 feet deep and well within the Weir sand. There was but a slight showing of oil but a good result of gas production, as we have hereinbefore seen. It is true that there is some testimony in the record showing that some 2,000 feet below the Weir sand is another strata called the Berea sand and from which in some sections oil has been found, but there is no proof that there was any Berea sand or strata within the producing field here involved, nor had there ever been an oil well drilled below the Weir sand within that field and there were a number of producing ones therein. There was never any insistence by plaintiffs that the well in question should be drilled to the Berea sand. On the contrary, it seems to have been accepted by the parties at the time that the well had been sunk to the proper depth contemplated by the contract. But, whether so or not, we have held in accordance with the general law upon the subject that ''A completed well is one drilled to the formation or sand in which oil *in that district* is usually and commonly found, whether oil be found in the hole or not, unless a different meaning be expressed in the contract.'' (Our italics.) Kies v. Williams, 190 Ky. 596. That holding was referred to with approval in the later case of Sugg v. Williams, 191 Ky. 188. Applying that rule to the evidence furnished in this record, we have no hesitancy in concluding that the well which the lessee drilled in this case was a completed one when finished within the contemplation of the parties to the lease contract.

It is next insisted that the lease was what is known as an ''unless'' one, and, therefore, unilateral and gave to the lessee the exclusive option as to whether he would drill the well or keep alive the lease by the payment of the provided rentals for the period in which no well was

drilled. But, whether that be true or not, or whether that construction of "unless" leases is to be followed or not, we need not determine for the purposes of the disposition of this case. In the first place, it is doubtful if plaintiffs, under the condition of the pleadings, can avail themselves of that contention, since it was not made in the pleadings, and we are inclined to the belief that it was necessary to do so in order to entitle them to the benefit thereof, for the reason that it seems to be the practice that a litigant may not rely on appeal upon a ground which he did not raise in his pleadings and present to the trial court. 2 Cyc. 660 and 665. See also Mason & Hurst Co. v. Feltner, 166 Ky. 254; Sheeran v. Tucker, idcm, 483; Jefferson's Admr. v. Bogard's Admr., 159 Ky. 376; Creekmore v. Central Construction Co., 157 Ky. 336, and L. & N. R. R. Co. v. Allen, 152 Ky. 837.

But, putting that and other preliminary questions aside for the purposes of this case, the law seems to be well settled that, notwithstanding a contract may be unilateral, the parties thereto are bound by all executed parts thereof. That general rule is thus stated in 13 Corpus Juris 334:

> "Want of mutuality is no defense in the case of an executed contract. A promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee."

This court has recognized and adopted that doctrine in its opinions in the cases of Allen v. New Domain Oil & Gas Co., 24 Ky. L. R. 2169, 73 S. W. 747; Lowe v. The Ayer-Loyd Tie Co., 29 Ky. L. R. 1302, 97 S. W. 383, and Victoria Limestone Co. v. Hinton, 156 Ky. 674. Its soundness cannot be disputed since, in an executed contract wherein both parties have performed their obligations, there is no occasion for the objection that the contract is unilateral, for the one who was not obligated to perform has already done so and thereby cured the defect; and the other party to the contract will not be allowed to repudiate it and at the same time reap the benefit of the performance by his contractor, although he was not originally obligated in a way to compel performance on his part. Such a rule would offend the fundamental principles of equity and it, therefore, has no place in the law.

The next contention is that neither defendant nor its predecessor in title has ever paid any of the provided

deferred rentals of two dollars per day for failure to complete a well within the time provided for; but clearly no such rentals were due or could be collected except upon condition that the well was not completed within the time agreed upon or within the extended time in consideration of the payment of the rentals. In other words, whenever the well was completed under the terms of the lease the obligation to pay rent ceased and was no longer obligatory, because its payment was conditioned only upon the failure to complete the well. The cases relied on by appellants in support of this contention are ones where there had been no completed well nor development pursuant to the terms of the lease, either within the time provided for therein, or at all, nor any legal excuse therefor, and in such cases the failure to pay rentals, it was held, furnished grounds for forfeiture under the terms of the particular lease under consideration. We, therefore, find no merit in this contention.

Lastly, it is argued that the second $100.00 due as gas rental on or about the middle of April, 1921, was not paid although due in advance, and for that reason the lease is subject to forfeiture. In the first place, it appears in the record that plaintiff had theretofore or about that time filed another suit, and it was then pending, to forfeit the lease on the grounds hereinbefore discussed, and we doubt if defendant would have been justified in paying the gas rental until that litigation was terminated in its favor; but, waiving that point, and without determining it, it is shown that plaintiffs had announced that they would not accept it and refused to take a registered letter from the post office for fear it contained a check in payment therefor. But, beyond all that, the lease makes no provision for a forfeiture for such failure. If the annual payment of the $100.00 in advance for the use of the gas was not paid at the time it was due then it became a debt due from defendant to plaintiffs and they could collect it through the ordinary processes of the law the same as any other royalty or rent for a mineral lease, and a forfeiture of the lease will not be decreed because of arrears of rent or royalty except upon clear language in the lease providing therefor.

Finding no ground to disturb the judgment, it is affirmed.