**LEONARD et al. v. PRATER et al.**
(No. 7172.)

Court of Civil Appeals of Texas. Austin.
May 9, 1929.

Rehearing Denied May 29, 1929.

A. L. Kirkpatrick, of Brownwood, Paul V. Harrell, of Cross Plains, and Samuels, Foster & McGee, of Fort Worth, for appellants.

Woodruff & Holloway, of Brownwood, for appellees.

BLAIR, J. On May 8, 1922, appellees executed an oil and gas lease to appellant C. A. Leonard on 200 acres of land in Brown county, for a term of 3½ months from date. Leonard by mesne conveyances assigned interests to the other appellants. No cash consideration was paid for the lease, but it provided for payment of one-eighth royalty on the gross production of oil and "⅛ net proceeds of all gas sold * * * from each well where gas only is found," and further that lessors be paid "out of the first oil produced on said lease five thousand dollars worth of oil, except that the expense of operating the lease shall be deducted before said lessors shall receive said five thousand dollars in oil."

The lease provided a well should first be drilled on the "west 112 acres" of the 200-acre tract, and, in the event oil or gas should be found in paying quantities, then a well should be drilled on the "east 88 acres." The first well was not completed at the end of the 3½-month period, and a written extension agreement was executed continuing in full force and effect the lease of May 8, 1922, but "with the understanding that the $5,000.00 mentioned in said contract of May 8th, be paid from production of oil or gas instead of just oil as was recited in the original lease."

In September, 1922, the first well was completed, a producer of gas only, which was immediately capped and equipped at the cost of $591.67, and piped into a main line, and the gas marketed to the extent of $4,066 at the time of the trial, out of which $575 was paid appellees as royalty, appellants retaining $3,491. Appellants then commenced and completed a well, a dry hole on the east 88 acres in 1923, and same was plugged. This ended all development of the lands for oil or gas. About once a week appellants' agent looks after the commercial gas well which at the time of the trial was still producing.

By amended petition filed March 9, 1927, appellees sued appellants, alleging that they had marketed gas from the well in an amount exceeding $5,000, less operating expenses, but had failed to pay appellees the $5,000 provided for in the lease, or to render an accounting therefor; and, further, that appellants had failed to comply with the implied covenants of the lease to develop the premises with reasonable diligence after discovery of oil or gas in paying quantities and had abandoned all the lease except such part as might be found to have been developed by drilling of the gas well, and that by reason thereof appellants had prevented appellees

from receiving the $5,000, payable out of the first oil or gas produced, to their damage in that sum. Appellees prayed judgment for $5,000, with foreclosure of an equitable lien to secure its payment against the gas well, the oil and gas rights to any land that might be found to have been developed by the drilling of the gas well, and all personal property thereon; and also prayed for cancellation of such part of the lease as the court might find to be undeveloped or abandoned by appellants, alleging that the entire and moving consideration for the execution of the lease and extension agreement was the promise and agreement of lessee to drill the test wells, and, in the event oil or gas was discovered in paying quantities, to develop the lease with reasonable diligence, the lease being a determinable interest in the land contingent upon the implied covenant to operate and develop the premises for oil or gas. And, on a trial to the court without a jury, appellees recovered judgment against appellants, jointly and severally, for $5,000, with foreclosure of an equitable lien to secure its payment against the gas well and the oil and gas rights in 10 acres of land with the gas well in the center, and the personal property thereon, and for cancellation of all the lease except said 10 acres with the gas well in the center; hence this appeal.

■ It becomes necessary to construe the term "expense of operating" as used in the lease with reference to payment of $5,000 to appellees out of the first oil or gas produced. Appellants alleged that the term as commonly used and understood by oil operators to include all expense of equipping to drill, drilling, maintaining, and operating the lease, or, in the alternative, that, if not so commonly used and understood, then the term was ambiguous and was intended by the parties to the lease to include all such expense. No fact or circumstance was offered to show that the parties intended to use the term as alleged by appellants. However, testimony was offered to the effect that the term "expense of operating a lease," as used in oil and gas leases, was used and understood by oil operators to include all cost of equipping to drill, drilling, maintaining, and operating. This proffered testimony was rejected on objection of appellees that it was immaterial and irrelevant, and varied the terms of the written contract, the court holding the term "expense of operating" as used in the lease to be plain and unambiguous, and to mean expense of operating the lease after production of oil or gas in paying quantities as distinguished from cost or expense of equipping to drill, drilling, maintaining, and all operation looking to development of the lease. We sustain the trial court.

The primary purpose of the execution of the lease was to procure development of the land for both oil and gas, which appellants agreed to do at their own expense and as a part consideration for the lease. The only compensation appellees were to receive was an agreed proportion of the oil produced by the development and a part of the gas sold; that is, if either oil or gas was found in paying quantities, appellants were to receive one-eighth of the gross oil produced, one-eighth net of the gas sold, and $5,000 out of the first oil or gas produced after deducting the "expense of operating the lease." Each item of compensation was payable in the same manner and measured by the same standard, the amount of oil or gas produced, and without taking into consideration whether that production was profitable on the whole to appellants. Clearly appellees did not agree to look only to the profits for payment of the $5,000 after payment of expense of development and operation, which is the effect of appellants' contention. Appellants agreed to develop the land for oil and gas at their own expense, and there is no language in the lease which can be construed to mean that they were entitled to be reimbursed for such expense before payment of the $5,000 compensation out of the first oil or gas produced. If such had been the intention of the parties, it could have been easily stated in the contract. Especially is this true in view of the fact that a large amount of the expense of development had been incurred at the time the extension agreement was executed.

It is also clear that all compensation to appellees was contingent upon discovery of oil or gas "in paying quantities," and the term "expense of operation" has a well-defined and accepted meaning with regard to production of oil or gas in paying quantities. In that regard the term has been held to only include actual cost of operation, without taking into consideration the cost of drilling the well itself. Texas Pacific Coal & Oil Co. v. Bruce (Tex. Civ. App.) 233 S. W. 535; Masterson v. Amarillo Oil Co. (Tex. Civ. App.) 253 S. W. 908; Kelley v. Ivyton Oil & Gas Co., 204 Ky. 804, 265 S. W. 309; Smith v. Jefferson County, 16 Tex. Civ. App. 251, 41 S. W. 148; Aycock v. Paraffine Oil Co. (Tex. Civ. App.) 210 S. W. 851; Owens v. Curd, 192 Ky. 146, 232 S. W. 640; Young v. Forest Oil Co., 194 Pa. 243, 45 A. 121; Gypsy Oil Co. v. Marsh, 121 Okl. 135, 248 P. 329, 48 A. L. R. 876; Mills and Willingham on The Law of Oil and Gas, pp. 122, 123.

In Aycock v. Paraffine Oil Co., supra, it is held that the words "'in paying quantities' means that the quantity discovered must be sufficient to pay the lessee a profit, though small, over operating expenses, although it may never repay the cost of the well and its operation, and, as a whole, may result in a loss to the lessee."

These cases are not directly in point, but show that courts generally have recognized and accepted the term "expense of operation"

as used in oil leases similar to this one as being separate and distinct from expense of drilling and development, and to mean expense of operation after production of oil or gas in paying quantities.

■ Some of the appellants contend that they were not bound by the terms of the extension agreement providing for the payment of the $5,000 out of either oil or gas, dated August 22, 1922, because it was dated or recorded after the date of their assignments from Leonard, and there was no evidence to show that they had notice of it before they acquired their interest. The contention is not sustained because the evidence not only shows that Bryant, the agent of these appellants, had notice of the extension agreement, but also shows that the agreement was signed at his instance under threat to move the machinery off the lease unless it was signed.

We are also of the opinion that these appellants accepted the benefits of the extension agreement and are bound by its terms. The lease was dated May 8, 1922, and was for a term of 3½ months from date. Evidently the parties to the original lease thought it had expired by its own terms, because, on August 25, 1922, the lessors signed and acknowledged the extension agreement, which was dated August 22, 1922, in part consideration of the $5,000 being paid out of either oil or gas. These complaining appellants acquired their interests on August 23, 1922, at which time their assignor had no lease except under the extension agreement. Sullivan v. Ramsey (Tex. Civ. App.) 155 S. W. 580; Pittman & Harrison Co. v. Robey & Co. (Tex. Civ. App.) 234 S. W. 1114; 21 R. C. L. 932.

■ The court canceled the lease except as to "the gas well and 10 acres surrounding the same, in a square with the well as nearly as possible in the center," upon two grounds: (1) Because appellants had failed to reasonably and diligently develop the remainder of the lease under the implied covenants to do so after discovery of gas in paying quantities; and (2) because appellants had abandoned both in fact and intention all of the lease except the gas well and 10 acres surrounding same. Appellants contend that there is no evidence of any abandonment or of any intention to abandon. The contention is not sustained.

The parties are agreed that abandonment of an oil or gas lease is a question of intention, and usually one of fact. It is also agreed that, if there has been an abandonment of the lease or any part thereof by appellants, equity will decree a cancellation of the part abandoned. Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464; T. P. Coal & Oil Co. v. Stuard (Tex. Civ. App.) 7 S.W.(2d) 878; T. P. Coal & Oil Co. v. Barker (Tex. Sup.) 6 S.W.(2d) 1031; Freeport Sulphur Co. v.

American Sulphur Royalty Co. (Tex. Sup.) 6 S.W.(2d) 1039. Cox v. Sinclair Gulf Oil Co. (Tex. Civ. App.) 265 S. W. 196; Munsey v. Marnet Oil & Gas Co., 113 Tex. 212, 254 S. W. 311.

On the issue of abandonment, and in addition to the above-stated facts, the evidence shows that the whereabouts of Leonard and others having record interests in the lease were unknown. All machinery, except the gas well equipment had been removed from the premises for more than 3 years next preceding the filing of this suit. And, although appellees often requested Bryant, the agent of most of the appellants, and some of the appellants, to further develop the premises or to release a portion thereof to them, they had not done so, and no effort was ever made to develop the land after the discovery of gas in paying quantities and completion of the second well a dry hole. Appellants' agent goes on the premises to look after the gas well occasionally. Clearly this evidence warranted the court in finding that there had been an abandonment of all the lease except the gas well, and 10 acres surrounding it.

■ The undisputed evidence shows that 10 acres with the gas well in the center will reasonably protect such well from drainage from other parts of the lease and adjoining property, and, since this is an equitable proceeding, we think the court properly and equitably canceled the lease as to the abandoned portion. This seems to be the established practice in this and other oil-producing states. Cox v. Sinclair Gulf Oil Co. (Tex. Civ. App.) 265 S. W. 196 (writ of error refused); Carder v. Blackwell Oil & Gas Co., 83 Okl. 243, 201 P. 252; Papoose Oil Co. v. Rainey, 89 Okl. 110, 213 P. 882; Brown v. Union Oil Co., 114 Kan. 166, 217 P. 286.

The court also canceled the undeveloped portion of the lease for lack of diligent development on the part of appellants under the implied covenants of the lease. In Waggoner Estate v. Sigler Oil Co. (Tex. Com. App.) 284 S. W. 921, it is held that an oil and gas lease may be canceled for lack of diligent development. The case, however, has been withdrawn from the Commission of Appeals, and is still pending in the Supreme Court. But the question is not material here, since we are holding that the court correctly canceled the undeveloped portion of the lease on the ground of abandonment.

■■ The court found that appellants did not use reasonable diligence in developing and operating the lease so as to produce oil or gas after discovery of gas in the first well, with which to pay the $5,000 out of the first oil or gas produced, and accordingly rendered judgment for appellees against appellants for that amount as damages. This judgment is attacked upon the sole ground that the evidence conclusively shows the two wells drilled cost approximately $24,000, and there-

fore no obligation rested upon appellants to carry the operations beyond the point where they will be profitable to them, even if some benefit will result to appellees from such operations. The following cases are cited in support of the contention: Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464; T. P. Coal & Oil Co. v. Stuard (Tex. Civ. App.) 7 S.W.(2d) 878; T. P. Coal & Oil Co. v. Barker (Tex. Sup.) 6 S.W.(2d) 1031; Freeport Sulphur Co. v. American Sulphur Royalty Co. (Tex. Sup.) 6 S.W.(2d) 1039; Brewster v. Lanyon Zinc Co. (C. C. A.) 140 F. 801. The test, however, is not whether further development would be profitable to appellants as measured by the expense already incurred in discovery of gas; but, as held by the Supreme Court in the case of Texas Pacific Coal & Oil Co. v. Barker, supra: "It was the duty of the lessee to drill an offset or additional well, if, considering the cost of same and the probable profit therefrom, he would have been doing what an ordinarily prudent person would have done under the same circumstances. Summers' Oil & Gas, Sec. 135, pp. 434, 435."

The question is therefore one of fact and appellants do not attack the finding of the trial court except that the issue was not established by a preponderance of the evidence. This we do not sustain.

The evidence quoted above in support of the finding on the issue of abandonment is applicable on this issue. In addition it was shown that on all sides of the lease there are producing oil and gas wells, some of them being as near as a quarter of a mile. And, although dry holes have been drilled between these wells and the lease, appellants' agent and witness testified as follows: "I don't mean to testify at all that the lease is not any good—it might produce a lot of oil some day * * * It could be productive of oil in large quantities. That field is spotted—'it is that.' You can drill a dry hole and then move to another location and probably get a paying well."

The lease provides that appellants may use free of cost the gas being produced for all future operation and development of the premises, thus materially reducing the cost of drilling. The extension agreement provided for payment of $5,000 out of the first oil or gas produced. Appellants obligated themselves to use reasonable diligence to develop the 200 acres within a reasonable time so that appellees would receive the $5,000 compensation, and we therefore conclude, under the evidence detailed, that their failure to develop the lease as agreed entitled appellees to collect as damages the $5,000 stipulated. The following authorities support our conclusion: Empire Gas & Fuel Co. v. Pendar (Tex. Civ. App.) 244 S. W. 184; Moore v. Jones (Tex. Civ. App.) 278 S. W. 326; Honaker v. Guffey Petroleum Co. (Tex.

Civ. App.) 294 S. W. 259; 6 R. C. L. 945, 946; 13 C. J. 631.

The general principle of law announced in these cases is that, where a promise is to pay out of a fund to be realized in a certain way, there is an implied obligation to use reasonable diligence in performing the act upon which payment is contingent, in default of which payment becomes due without performance of the condition.

In this connection it may be stated that, under the holding that the term "expense of operating the lease" meant expense of operation after production of gas in paying quantities, and the finding of the trial court that $3,491 of gas had been sold, and the proceeds retained by appellants, only the difference in that amount, less the $591.67 operating expense, and the $5,000 judgment for damages, is involved, because the judgment for $5,000 is based on both appellees' suit for an accounting and for damages for failure to reasonably and diligently develop the premises for oil or gas.

We find no error in the judgment, and it is affirmed in all things.

Affirmed.