# Browning et al. v. Blanton's Administrator et al.

(Decided November 6, 1931.)

W. R. PRATER, DAVID BROWNING, and FRED HOWES for appellants.

WHEELER & WHEELER for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Reversing.

On May 20, 1920, Frank Blanton and Sallie Blanton, his wife, executed to the Ken-Mo Oil & Gas Corporation an oil and gas lease on ten acres of ground in Johnson county. The lease, among other things, contained these provisions:

"Agreement of Lease made and entered into this 20th day of May 1920, between Frank Blanton and Sallie Blanton, his wife, hereinafter called lessors, and Ken-Mo Oil & Gas Corporation of Johnson County, Kentucky, hereinafter called the lessees:

"Witnesseth: That the lessors in consideration of the sum of $400.00 (Four Hundred) Dollars,

receipt of which is hereby acknowledged and the covenants and agreements hereinafter contained to be kept and performed by the said lessee, does hereby grant unto lessee, or assigns, for the term of ten (10) years (and so long thereafter as oil or gas is produced by lessee thereafter) all the oil and gas in and under the lands hereinafter described. . . .

"The lessee agrees to deliver to lessors in tanks, to be furnished by the lessor or in pipe lines that may be connected with the well, a royalty of one-eighth of all oil produced and saved from the premises; and to pay as royalty for each gas well from the time and while the gas is marketed off the premises, the sum of $300.00 for less than one million feet and $400.00 over 1,000,000 feet; $75.00 or $100.00 to be paid each three months, payable quarterly in advance from the date the same is utilized. . . .

"Lessee agrees to commence the drilling of a well on said premises within six months from this date, and complete the same within eight months from this date hereof, or to pay for delay in so beginning and completing said well, as hereinafter provided. In case of a failure to so commence drilling a well on said premises within said time, or to complete same within eight months from date hereon. the lessee agrees to pay as rental to the lessor the sum of fifty dollars for each and every month thereafter during the term hereof or until a well is completed which produces oil or gas in paying quantities; payable quarterly in advance, beginning at the expiration of said eight months, and when oil or gas is produced in paying quantities, the obligation to further pay said rental shall thereupon cease; but the royalties hereinbefore stipulated for shall be paid."

The lessee, in eight months, put down a well to the Weir sand, or about a thousand feet. Oil was not struck; gas was produced, but less than 1,000,000 feet, and royalty at the rate of $300 a year was paid. On April 26, 1922, the Ken-Mo Oil & Gas Corporation conveyed this and other leases to L. G. Meade and J. T. Stanford. On August 11, 1926, Meade and Stanford conveyed this lease with other leases to Iley B. Browning. Frank Blanton having died, S. L. Blanton, the administrator of his

estate, Sallie Blanton, his widow, and Esther Belle Blanton, his infant child, suing by her mother as her next friend, brought this action on September 20, 1929, against Iley B. Browning and E. G. Meade to recover $3,000 delayed rentals and $1,000 damages in addition to the rentals. By an amended petition, filed November 15, 1930, after the expiration of the ten years stipulated in the lease, they filed an amended petition praying damages from September 20, 1929, to May 30, 1930, the date on which the lease by its terms expired. The issues were made up, and on final hearing of the case the court entered judgment in favor of the plaintiffs against Meade for $1,125, being the rentals due on the lease from the last payment he made until the transfer to Iley B. Browning, and against Browning for $2,250, being the rentals at $50 a month from the time he bought until the end of the lease. The defendants appeal.

There was no trouble about the royalty as long as the Ken-Mo Gas & Oil Corporation held the property, but after Meade got it the pressure commenced going down. For a while he paid $25 a month royalty, and when the pressure went down still lower it was reduced to $20, and then reduced to $15. These settlements were made between Meade and the administrator. Meade paid the administrator on January 21, 1924, $342.26 on royalties, and on September 24, 1925, $67.74. These sums were paid on a settlement up to September 1, 1924. Meade paid nothing after this and no demand was made of him. The well then had not enough pressure to get the gas into the pipes. After Browning came in, the rock pressure in the well was not sufficient to discharge the gas into the line. He thought that by enlarging his compressor and combinning it with some other wells that he had it could be used and saw Tom Conley and Arch Blanton, and they agreed to take $10 a month. He then saw Mrs. Blanton and asked her about reducing the royalty on the well, and she did not consider that the lease was in force; thought that he did not have a lease on the land. He told her he did not care whether it was in force or not, he would use the gas if she would agree to these terms, and she would not agree to take anything less than $300 a year, and he gave up the idea of increasing the size of his copresser plant, but told her that he would not pull the casing and tubes out of the well, as the wells on the adjoining lease were getting weak and might play out, and that it might pay him to come over

to this well and pay the royalty if it was necessary to get gas to run his lease. For that reason the casing and tubing were not pulled out, but after this he got sufficient gas on his other leases so he gave up the idea of trying to market gas from this well, in view of the fact that it was so small and they would not reduce the royalty. There was no time after he got the property that the wells could be operated at a profit. He did not offer to return the lease to Mrs. Blanton or give it up, but just let the matter stand as it was. In fact, Browning got no gas from the well after he bought. Mrs. Blanton testified that she had an agreement with some persons to execute a lease for a thousand dollars, but they found out about this other lease and did not want to take the property with this lease on it. She says that she had gone to see Meade before he sold the lease and he said he would give the lease up, that it did not pay enough to hold the lease, but he in fact did not surrender and afterwards included it in his deed to Browning. She does not say that she told Browning of the offer she had received, or request him to give up the lease and so remove the objection to her power to lease the property. In fact, the title to the land had descended to the infant child and she was without power to convey her daughter's title. Browning says she did not mention the matter to him, and if she had asked him to surrender the lease he would have been glad to do so.

The rights of the parties turn on the terms of the written contract. National Bank v. Kentucky River Coal Co., 230 Ky. 689, 20 S. W. (2d) 724. By the contract the lessee agreed to commence the drilling of a well on the premises within six months from the date of it, and to complete the well within eight months from that date, and if it failed to do this it agreed to pay as rental to the lessor the sum of $50 a month thereafter during the term of the lease or until a well was completed which produced oil or gas in paying quantities; and when oil or gas was produced in paying quantities the obligation to further pay the rental should cease, but the royalties stipulated for in the lease should be paid. It was stipulated in the lease, among other things, that the lessee would pay, as royalty for each gas well, from the time and while the gas is marketed off the premises, the sum of $300 for less than a million feet; $75 to be paid each three months. The lessor did complete a well within eight months which produced gas in paying quantities.

The royalty from this time, at $300 a month, was paid to the lessor as long as the original lessee held the lease. By the express terms of the lease the rental of $50 a month ceased when oil or gas was produced in paying quantities. When oil or gas was produced in paying quantities, the only obligation left on the lessee was to pay the royalty, and there was no obligation to pay longer the rental of $50 a month. This rental of $50 a month was fixed to secure the completion of a well which produced oil or gas in paying quantities within eight months, and when such a well was completed the clause as to rental of $50 a month was at an end. 1 Thornton on Oil, etc., sec. 281.

Appellees earnestly insist that the well was not completed within eight months, because it was only put down to the Wier sand and there was oil or gas to be found in the Corniferous sand a thousand or more feet farther down. This has turned out to be true by borings made about the time the suit was brought, but was not known to be a fact at the time this well and the others in the neighborhood were put down. When this well was put down and brought in gas in paying quantities, and the lessor accepted it as fulfilling the contract and received the royalty, he cannot afterwards maintain that the well did not fulfill the contract, having accepted the well as fulfilling the contract and having received the royalty under the contract, and pursuant to it he is estopped now to maintain that the well should have been put down deeper or that something else should have been done that was not done. The contention which is made now, in the light of facts since discovered, cannot be sustained, for the election then made and acquiesced in for years settled the rights of the parties. Plumber v. Southern Oil Co., 185 Ky. 243, 214 S. W. 896; Kelley v. Ivyton Oil Co., 204 Ky. 804, 265 S. W. 309; Hurst v. Petroleum Exploration, 221 Ky. 786, 299 S. W. 954.

The fact that the well, though then producing gas in paying quantities, after some years ceased to do so, in no wise affects the rights of the parties. There is no provision in the contract for a rental at $50 a month if the well which was put down and produced gas in paying quantities should cease to do so. This is a condition not provided for in the lease, and the court is without power to add terms to the contract. The fact is, as shown by the circumstances and conduct of the parties, that when

this contract was made the boring of a well to the Wier sand was all that ,was contemplated. There was never a demand that a deeper well should be put down or that the lessee should do anything more than he had done. The evidence is uncontradicted that the well has not produced gas in paying quantities since September, 1924; a final settlement was made up to that time and no demand for further royalties was ever made after that time. On the whole case the court concludes that under the proof appellants are not liable for any rents or royalties on this land. The lease expired May 19, 1930. 40 C. J., p. 1934, sec. 645.

Judgment reversed, and cause remanded for a judgment dismissing the petition.